LOTTINGER, Judge.
This is a suit for Workmen’s Compensation wherein the petitioner, Alfred D. Hooper, claims total and permanent disability. The defendant is Hartford Accident & Indemnity Company, the compensation insurer of Cities Service Refining Company. The Lower Court awarded judgment for defendant and dismissed petitioner’s suit. The petitioner has appealed.
The petition alleges that on August 6, 1953, while employed by Cities Service Refining Company, petitioner was involved in an accident resulting in injury to his back. He claims that the said injury has left him totally and permanently disabled to perform his duties as a boilermaker, and asks for judgment accordingly.
The evidence discloses that petitioner was employed as a boilermaker by Cities Service Refining Company in Calcasieu Parish, Louisiana. At about 2:30 a. m. on August 6, 1953, while petitioner and his helper were attempting to move a heavy metal cover plate, an accident occurred which caused petitioner’s body to be suddenly jarred and twisted. Petitioner testified that, at the time of the accident, he immediately felt a sharp pain in his hip and across the small of his back. This pain subsided shortly thereafter, and petitioner continued to perform his duties until the end of his shift at eight o’clock that morning. He then went home, retired and slept from about 9:00 o’clock a. m. until 4:00 o’clock p. m. Upon waking up at about four o’clock, he rolled out of bed and knelt down to pray, but when he attempted to arise from his kneeling position he felt a severe pain in his back, which became more severe as he stood up. Upon ■standing up he found that he was unable to move. A doctor was immediately summoned, and upon petitioner’s instructions Mrs. Hooper called the First Aid Station at the refinery and notified them of the accident which had occurred at two-thirty that morning.
The accident was not reported by petitioner, or anyone else until approximately thirteen and one-half hours after it is alleged to have occurred. However, both petitioner and his helper were well aware-of a strict company rule which requires the prompt reporting of all accidents. The evidence indicates that petitioner saw his foreman on several occasions after the accident, however, he failed to report same. The evidence further shows that petitioner and his helper went to the First Aid Station to get a pill, but they still failed to-report the accident. Petitioner’s helper, Adam Soileau, testified that he was ordered by petitioner not to report the accident, and there were no other eye witnesses to the accident.
The record shows that petitioner received compensation, at $30 per week, from: the date of the accident until January 14, 1954, at which time such payments were discontinued. All medical expenses were paid by defendant.
The defendant filed answer denying that petitioner was involved in an accident, denying that petitioner received any injury if any accident did occur, and claiming that, if petitioner was accidently injured, he is now fully recovered and able to: assume his occupation as boilermaker.
*893 The Lower Court favored us with a well reasoned written opinion, wherein it decided as follows:
“The question of whether plaintiff was still disabled on January 14, 1954, or whether by that time he had recovered from the injury which he is alleged to have received on August 6, 1953, will be considered first, since this Court is of the opinion that the entire case can be disposed of on that issue.
“Shortly after plaintiff noticed the pain in his back about four o’clock on the afternoon of August 6, 1953, he was examined and treated by Dr. B. M. Woodard, a physician of plaintiff’s own choice, who had treated him on another occasion prior to that time. Dr. Woodard treated plaintiff continuously from the date of the accident until December 14, 1953, at which time plaintiff was discharged as being fully recovered and able to return to his regular duties.
“Dr. Woodard, as a witness for the plaintiff, testified that at the time he examined Mr. Hooper on August 6, 1953, he found that he was suffering from ‘a strain of the lumbosacral muscles to the back, with spasm which is the indication of the strain.’ He further testified that all muscle spasm had disappeared by November 2, 1953, and that plaintiff had fully recovered from any further disability and was able to return to work by December 14, 1953. At the time he was discharged plaintiff still complained of pain in his back, but Dr. Woodard was not able to find any objective symptoms which could cause the pain, and in spite of that complaint he concluded that plaintiff had fully recovered and was able to return to his regular duties. The record shows that Dr. Woodard notified defendant in writing on January 23, 1954, that plaintiff ‘was discharged from this office December 14, 1953, as being able to return to work and in my opinion there is no permanent disability.’
“In connection with the treatment administered by Dr. Woodard, plaintiff was taken to the Methodist Hospital in Houston, Texas, where he was examined by Dr. B. F. Boylston, an orthopedic surgeon on the staff of that hospital, and by Dr. William S. Fields, a neurological surgeon on the staff of the Texas Medical Center of Houston, Texas, and Professor of Neurology at the Baylor University College of Medicine. Both of these doctors examined and observed plaintiff during the period beginning October 26 and ending October 30, 1953. By stipulation of counsel the written report of each of these doctors was received in evidence in lieu of their testimony.
“The following portion of Dr. Boyl-ston’s report summarizes his findings:
“ ‘This rather obese 57 year old man, while under observation in the Methodist Hospital required no medication for pain. His physical findings, X-ray findings, and neurological examination are not consistent with a ruptured inter-vertebral disc. It was recommended that the patient have lumbar nyelogram for diagnosis only; he refused this at the time.
“ ‘It is my feeling that this patient has sustained a lumbosacral strain which has not responded as well to conservative treatment as one would expect due to his age and a large pendulous abdomen. I should recommend that this patient be kept on conservative treatment for a period of three months from the time of his original injury. He should continue to wear his lumbosacral support which is entirely adequate. I do not believe that this patient will sustain any residual permanent partial disability as a result of his recent injury.’
“Dr. Fields concluded his report with the following statements:
*894 “ ‘There was nothing’ in the examination at the time which would indicate any evidence of ruptured intervertebral discs. On the other hand, there appeared to have been some lumbosacral strain. The abnormal motor and sensory findings in the neurologic examination do not fit any neurologic picture. They are on the other hand, more suggestive of psycho-neurotic reaction.
“ ‘It is my impression that the patient has suffered from a lumbosacral strain and that a good bit of the present difficulty is complicated by the presence of psycho-neurosis with a hysterical conversion reaction. The history of motor and sensory paralysis involving both lower extremities during the period immediately following the accident would tend to confirm this latter suspicion.’
“The Court concludes from the testimony of both of these experts that plaintiff had sustained a lumbosacral strain at some time prior to the examination, that there was no indication of a ruptured intervertebral disc, that the injury was mild and of a temporary nature, and that if plaintiff was disabled at the time of that examination, his disability could be eliminated within a few weeks with conservative treatment.
“Dr. George B. Briel, an orthopedic surgeon called by plaintiff, examined Mr. Hooper on May 28, 1953, and again on August 12, 1953, six days after the injury which forms the basis of this suit is alleged to have been sustained. He testified in effect that the only objective sign of injury he found on this last examination was ‘an inconstant spasm present in the right lumbosacral angle,’ which he defined as a spasm which would be present at times and then on certain motions of the patient’s body it would disappear. He found no neurological evidence of a disc injury. He concluded that plaintiff was suffering from a lumbosacral strain, and that his symptoms should disappear after a matter of a few weeks. His testimony in that respect is as follows:
“ ‘At the time I examined him I could find only this mild spasm and no other objective symptoms, and I felt, and I told Dr. Woodard personally, that I felt that after a matter of a few weeks he should be all right.’
“Dr. Briel had previously examined plaintiff on May 28, 1953, to determine whether plaintiff was able to return to his employment, and at that time he concluded that plaintiff was incapable of performing hard manual labor without considerable risk of recurrence of back injuries and disability since plaintiff has a history of such prior injuries. Dr. Briel testified, however, that plaintiff’s basic underlying condition on August 12, 1953, less than a week after the alleged accident occurred, was better than his condition was in May of that year before any such injury is alleged to have been sustained.
“Dr. E. C. Campbell, an orthopedic surgeon called by defendant, examined plaintiff on May 28, 1953, and again on August 31 of that year. The first examination was made to determine whether plaintiff was able to return to his regular employment, but no conclusions were reached by him as a result of that examination. On August 31, 1953, Dr. Campbell found that due to plaintiff’s ‘obesity, his lumbosacral arthritis, his weak abdominal muscles following multiple abdominal surgical procedures all predisposed this man to low backache,’ and render him not a good candidate for heavy labor. He found no disability, however, resulting from the accident which allegedly occurred on August 6, 1953. His testimony reads in part as follows:
“ ‘Q. Now, did you find any objective findings of disability on your examination of August 31, 1953, which would indicate that this man could not perform the work of a boilermaker without undergoing severe pain.’
*895 '“A. The main objective findings were those of obesity, weak abdominal muscles and the X-ray findings of degeneration, none of which can be directly attributable to any specific injury.’
“Dr. George P. Schneider, Jr., an orthopedic surgeon called by plaintiff, testified that he examined plaintiff on December 7, 1953, and on April 1, 1954. His testimony is to the effect that each of these examinations revealed that plaintiff was then suffering from a ruptured disc syndrome, probably due to an injury to the intervertebral disc at either the fourth or fifth lumbar level, mainly on the left side. On the basis of the history which the patient presented at the time of the initial examination, it was Dr. Schneider’s impression that this disabling condition resulted from the traumatic episode or accident which the plaintiff stated occurred on August 6, 1953. Dr. Schneider is firmly of the opinion that plaintiff was disabled from performing the duties of a boilermaker at the time each of these examinations was made, and that the period which would be required for his recovery is indefinite.
“Plaintiff was also examined by three other doctors whose testimony or whose medical reports are incorporated in the record. In each case, however, the doctors examined plaintiff before the accident which forms a basis of this suit occurred, and it is not necessary to consider the testimony of these experts at this time.
“A review of all of this medical testimony reveals that Dr. Schneider is the only expert who expressed the opinion that plaintiff is suffering from a ruptured disc syndrome. Three other orthopedic surgeons, one neurological surgeon, and one general practitioner concluded that there was no indication of a disc injury. All of these experts are men of high standing in their profession and there is no reason why the testimony of one should outweigh that of the others. Although Dr. Boyl-ston and Dr. Fields concluded that on October 30, 1953, plaintiff was suffering from a lumbosacral strain, they expressed the opinion that he would recover from this condition in a relatively short period of time. Dr. Woodard, a general practitioner and plaintiff’s own doctor, treated him continuously from August 6 to December 14, 1953, and on the date last mentioned concluded that he was fully able to return to his regular employment. This Court feels that the testimony of Dr. Woodard in that respect is entitled to a great deal of weight since he was thoroughly familiar with the progress of the treatment administered and the personality of the patient.”
We are thoroughly in accord with the Lower Court with respect to the above medical findings. We might add, however, that the record discloses that petitioner had had several prior accidents, one of which resulted in major injuries to petitioner. Said accident was an automobile accident which occurred on December 8, 1952. As a result of the said automobile accident, petitioner sustained injuries to his back, which, at the time, were claimed by petitioner to be disabling. On April 10, 1953, petitioner entered into a settlement in the sum of $6,750 on his claim resulting from the said accident. At the time petitioner claimed to be totally and permanently disabled, however, the record shows that he returned to his work with Cities Service only a few days after the said date of settlement.
The above mentioned accident was not a result of petitioner’s employment with Cities Service. However, it is petitioner’s claim that the alleged accident of August 6th, 1953, aggravated his back condition which, if true, would entitle him to compensation. Drs. Woodard, Briel and Campbell examined petitioner subsequent to both of the accidents, and we believe that it is worthy of note that Dr. Briel testified that petitioner was in a better condition a week after the alleged accident of August 6th *896 ■than he was in May, 1953, or shortly after the automobile accident. All of these doctors claim that there was no permanent and total disability after the accident in August, and they all testified that petitioner was able to return to work.
The medical testimony is overwhelmingly to the effect that petitioner is able to return to work. We have found no error in the judgment below, and, accordingly, the judgment will be affirmed.
For the reasons assigned, the judgment of the Lower Court is affirmed, all costs of this appeal to be paid by petitioner.
Judgment affirmed.